draft of $2,000 was given, the authority had expired, and the bank knew the fact. The new draft was not obligatory upon the defendants, unless drawn in conformity with some new authority. It was not drawn in pursuance of such new authority, for the letter of the defendants was never shown to the bank. The original authority was limited to the amount of purchases made before the expiration of the authority. This limitation was known to the bank, and they, consequently, could not bind the defendants by any discounts, after the original authority had expired, except so far as the same were necessary to pay for the purchases, made before the expiration thereof. The draft of $2,000 was not required for any such purchases so made, and the defendants ought not to be bound by it.

The remaining question was, how was the money received under the award to be appropriated? It was to be applied precisely as required by the terms of the assignment. The law made no appropriation different from the intention of the parties. By that assignment, the expenses were to be first deducted, and the balance only applied to the discharge of all the debts contemplated in the assignment, which were the three drafts now in suit. The balance must be applied to all the debts, and consequently must be applied pro rata. Four fifths were to be appropriated to the two drafts of $4,000, and one fifth to the draft of $2,000.

To the suggestion, that an actual appropriation was made by the cashier, there were two answers, either of which would be decisive against it. First. No such appropriation was authorized by the directors, and without their authority no such appropriation could be validly made by the cashier; and, in fact, the cashier testified that he himself never intended to make any appropriation. Second. Under the assignment, no such appropriation could be made, unless by the positive consent of both parties, dispensing with, and recalling the original appropriation made in the assignment.

The result of the opinion of the court was, that the defendants were liable upon the two drafts of $4,000 each, with interest from maturity, until the receipt of the money under the award. The expenses were then to be deducted from the award, and four fifths of the balance ($3,823.48), were to be credited against the amount of those drafts. Upon the balance of the two drafts, after such deduction, the plaintiffs were entitled to interest up to the time when the verdict was rendered.

## Case No. 4,658.
### FARMERS' BANK v. FOX.
[4 Cranch, C. C. 330.][1]
Circuit Court, District of Columbia. Oct. Term, 1833.

Mr. Taylor, for the defendant,

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Swann, for plaintiffs.
Mr. Taylor, for defendant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The original charter of the town of Alexandria, granted by Virginia on the 4th of October, 1779, gives the corporation power "to make by-laws and ordinances for the regulation and good government of the said town; provided such by-laws and ordinances shall not be repugnant to, nor inconsistent with the laws and constitution of the said commonwealth; and to assess the inhabitants for the charge of repairing the streets and highways; to be observed and performed by all manner of persons residing within the same, under reasonable penalties and forfeitures, to be levied by distress and sale of the goods of the offenders for the public benefit of the said town." The act of 1748, for erecting the town, did not give the trustees any power to assess taxes; nor did the acts of 1752, 1762, 1764, or 1772. The act of Virginia of 1796, authorized the corporation to recover the paving tax from non-resident proprietors of lots. By the 5th section of the act of congress of the 25th of February, 1804 (2 Stat. 255), amending the charter of Alexandria, it is enacted that "they" (the common council of Alexandria) "shall have power to raise money by taxes for the use and benefit of the said town; provided that their by-laws shall not be repugnant to, or inconsistent with, the laws and constitution of the United States." The act of congress of May 13, 1826 (4 Stat. 162), "further to amend the charter," provides for the sale of real estate for the taxes thereon; and "for the licensing, taxing, and regulating auctions, theatrical and other public shows and amusements." The power given to the corporation of Alexandria, by its amended charter, to raise taxes, is given in the most general terms, and without the least limitation as to the subject of taxation. The faculty to carry on the banking business seems to be as fair a subject of taxation as any other means by which money is to be acquired. It is the only mode by which the corporation can tax the stock of non-resident stockholders, who ought to contribute something to the expense of that protection of their property and their officers, which is afforded by the good regulations and sound police of the town. There is, in the tax, nothing inconsistent with the laws or constitution of the United States. The Farmers' Bank is not (like the Bank of the United States) necessary for the collection, safe-keeping, and transmission of the national revenues. The power to tax, and the charter of the bank, are given by the same authority; both emanate from the United States. If there should be danger that the corporation of Alexandria would abuse its power to the destruction of the bank, the power may be taken from them, or restrained by congress. We are of opinion, that the corporation of Alexandria has a right to tax the bank; and that the judgment, on the case stated, should be for the defendant, with costs.

## Case No. 4,659.

FARMERS' BANK v. HOOFF et al.

[4 Cranch, C. C. 323.][1]

Circuit Court, District of Columbia. May Term, 1833.

Before CRANCH, Chief Judge, and MORSELL, Circuit Judge.

MORSELL, Circuit Judge. The complainants, in this case, seek to have the benefit of a deed from Mary Resler in trust to secure to them the payment of a debt due by her, and on her own account. The property conveyed is a lot of ground, of which her husband died seized, claimed to be held in fee-simple under the will of her husband. Whether she took such an estate, or an estate for life, depends on the true construction of the will, unassisted by any introductory declarations, or by circumstances to be

[1] [Reported by Hon. William Cranch, Chief Judge.]